IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JESSICA HARRIS </br></br> Plaintiff, </br> v. </br></br> BLUEMERCURY, INC . </br></br></br> Defendant, | ) </br> ) </br> ) </br> ) </br> ) </br> ) Case No. </br> ) </br> ) </br> ) </br> ) |

## COMPLAINT

Comes now the Plaintiff, Jessica Harris, by and through undersigned counsel, and hereby files the instant Complaint against Bluemercury, Inc.. ("Defendant" or "Bluemercury") under the Genetic Information Nondiscrimination Act of 2008 ("GINA"), the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* and the Montgomery County Code.

## THE PARTIES

1. Jessica Harris (hereinafter referred to as "Plaintiff" is a resident of the state of Maryland.)

2. Plaintiff resides at 2300 McMahon Road, Apt 2331, Wheaton, Maryland 20902.

3. At all times relevant to this complaint, Plaintiff has been a resident of the State of Maryland.

4. Plaintiff is over the age of eighteen (18).

5. Defendant, Bluemercury, Inc. is a multi-million dollar "luxury beauty" retail business.

6. Bluemercury is a wholly owned subsidiary of Macys, Inc. and operates 166 specialty "luxury beauty" stores nationwide.

7. Bluemercury conducts retail business in Maryland and the DMV area through "specialty" stores and stores within Macys, Inc. retail locations.

8. Bluemercury employs more than 50 employees within a 75 mile radius of 1185 Grand Park Avenue, North Bethesda, MD 20852.

9. Bluemercury has systematic and continuous business contacts within the State of Maryland and with Maryland residents.

10. Bluemercury is registered to do business in the State of Maryland.

11. Defendant conducts millions of dollars of business in the State of Maryland.

12. Defendant conducts business from Defendant's properties and offices in the State of Maryland.

13. Defendant's registered agent for service of process in Maryland is Corporate Creations Network, Inc., 2 Wisconsin Circle No. 700, Chevy Chase, MD 20815.

14. Defendant is licensed to do business in the state of Maryland.

## JURISDICTION

15. The United States District Court for the District of Maryland has jurisdiction over this matter.

16. At all times relevant to this complaint, Plaintiff was employed by Defendant in the state of Maryland.

17. At all times relevant to this complaint, Plaintiff was a resident of the State of Maryland.

18. The employment actions and decisions described in this Complaint substantially occurred in Maryland.

19. Plaintiff's claims under the Genetic Information Nondiscrimination Act of 2008 ("GINA") and the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.*, raise questions of federal law.

20. The United States District Court for the District of Maryland has original jurisdiction over this matter.

21. The United States District Court for the District of Maryland has personal jurisdiction over the parties as described in ¶¶ 1-18, *supra.*

## FACTS

22. Plaintiff began working for Defendant in February 2018 as a "full time beauty expert."

23. Plaintiff has substantial experience and expertise in retail beauty consultation and sales.

24. As a beauty expert, Plaintiff teaches beauty techniques and classes to retail staff and consumers.

25. Plaintiff also provides advice and guidance to consumers regarding cosmetic brand choices and beauty supply decisions.

26. At all times relevant to this complaint, Plaintiff's performance exceeded the legitimate expectations of Bluemercury.

27. For example, Plaintiff received praise and accolades from Bluemercury's vendors, brand liaisons and clients.

28. Plaintiff's clients routinely gave positive and glowing reviews about Plaintiff's work product.

29. In April 2019, Plaintiff was promoted to the "store manager" position at Defendant's "Pike and Rose" retail location (1185 Grand Park Avenue, North Bethesda, MD 20852).

30. As of April 2019, Plaintiff assumed the supervisory and managerial duties for Defendant's the Pike and Rose location.

31. At all times relevant to this complaint, Plaintiff's performance in the managerial position exceeded the legitimate expectations of Bluemercury.

32. In January and February 2020, the United States was in the early grips of the COVID-19 pandemic.

33. Due to a number of factors, U.S. citizens had little information concerning the spread, impact and risks of the novel coronavirus.

34. Moreover, many retail chains such as Bluemercury were ill-prepared or lack information concerning the risks to employees, their families or customers presented by COVID-19.

35. Moreover, in January and February 2020, the federal government was telling the American public and corporate retailers like Bluemercury that the Coronavirus would "disappear" and it would be like a "miracle."

36. The U.S. Government stated that the coronavirus was comparable to the "regular flu."

37. With respect to indications that death rates reported by the World Health Organization were approximately 3.4%, the government stated that this death rate was "way" overstated and was "way under 1%."

38. The U.S. government also told employees that they were fine to "go to work" even where he, she or a family member had been diagnosed with COVID-19.

39. As a retail working mom with a daughter, Plaintiff could not afford to be so cavalier about a global pandemic. Plaintiff placed a higher value on the safety and wellbeing of her herself, her family and her customers than many individuals.

40. As of January 5, 2021, the U.S. has approximately 21 million confirmed Coronavirus cases and 354,000 mothers, daughters, sons, fathers and people dead.

41. In early February 2, 2020, Plaintiff's daughter fell ill with "flu like symptoms." Given the nature of the global pandemic, the uncertainty of the novel coronavirus and the lack of information concerning the virus, Plaintiff determined that she needed to care for her daughter's medical condition and that such medical condition was serious. In addition, Plaintiff was concerned about the risk of endangering her coworkers and customers or contracting COVID-19 while her daughter's immune system was compromised.

42. In the context of the COVID-19 pandemic, Plaintiff's daughters health condition was serious.

43. Plaintiff informed Defendant that her daughter had tested positive for a strain of the coronavirus which was not the novel coronavirus.

44. Between February 2, 2020 and February 7, 2020, Plaintiff utilized Family and Medical Leave Act and Montgomery County Code eligible sick leave.

45. Plaintiff notified Bluemercury that she was taking leave to care for her Daughter's serious health condition.

46. Bluemercury had notice of Plaintiff's intent, desire and/or attempt to request leave under the FMLA and/or the MCC.

47. Plaintiff qualified for Family and Medical Leave Act and Montgomery County Code leave under Bluemercury's handbook policy.

48. On February 7, 2020 Plaintiff was notified that she was terminated from employment.

49. Plaintiff was terminated for employment because Plaintiff utilized leave under the FMLA and Montgomery County Code.

50. Plaintiff was terminated from employment because Plaintiff had requested leave under the FMLA and Montgomery County Code.

51. Plaintiff was terminated from employment because Defendant was aware that Plaintiff's daughter had contracted the non-novel coronavirus.

52. Defendant's actions were willful and malicious.

53. Defendant was aware that it was violating federal and county law when Defendant terminated Plaintiff.

54. Plaintiff has suffered substantial pecuniary and nonpecuniary damages as a result of Defendant's unlawful actions.

**COUNT I – Retaliation in Violation of The Family Medical Leave Act, 29 U.S.C. §2615, *et seq*.**

55. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated.

56. Plaintiff was an eligible employee entitled to FMLA benefits.

57. Defendant is a covered employer under the FMLA.

58. Plaintiff applied for FMLA leave and availed herself of a protected right under the FMLA to care for a serious health condition of Plaintiff's child.

59. Plaintiff applied for FMLA leave and availed herself of a protected right under the FMLA to care for Plaintiff's own serious health condition.

60. Plaintiff engaged in protected activity under the FMLA.

61. Plaintiff availed herself of leave under the FMLA.

62. Plaintiff requested leave under the FMLA.

63. Plaintiff and Plaintiff's daughter had a qualifying FMLA serious health condition.

64. Plaintiff's daughter had a serious health condition qualifying Plaintiff for FMLA leave.

65. Defendant had notice of Plaintiff's protected activity.

66. Plaintiff provided Defendant with verbal notice sufficient to make the Defendant aware that the Plaintiff required FMLA-qualifying leave, and the anticipated timing and duration of the leave.

67. Defendant had notice and understood Plaintiff to be requesting leave to care for Plaintiff's daughter's serious medical condition.

68. Plaintiff's protected activity was causally connected to Defendant's decision to terminate Plaintiff.

69. Defendant discharged Plaintiff because Plaintiff availed herself of her rights under the FMLA.

70. Defendant used Plaintiff's FMLA leave as a negative factor in its decision to discharge Plaintiff.

71. There was a causal link between Plaintiff's use of FMLA leave, requests for FMLA leave and protected activity and Plaintiff's termination.

72. At all times relevant to this complaint, Plaintiff was successfully performing the functions of her position to a level to meet the Defendant's legitimate expectations.

73. Defendant violated the FMLA 29 U.S.C. §2615(a)(2) when Defendant terminated Plaintiff for engaging in protected activity under the FMLA.

74. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

75. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendant's actions.

76. For Count I, Plaintiff seeks damages, including punitive damages, injunctive relief, or other civil relief as authorized by the Family and Medical Leave Act.

77. Plaintiff requests judgment on count IV in an amount in excess of $75,000.

78. Plaintiff seeks an award of attorneys fees, costs, compensatory damages, punitive damages, backwages, pre-judgment and post-judgment interests, injunctive relief and all other relief available under the law.

**COUNT II – Interference in Violation of The Family Medical Leave Act, 29 U.S.C. §2615, *et seq.***

79. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated.
80. Plaintiff was an eligible employee entitled to FMLA benefits.
81. Defendant is covered entity under the FMLA.
82. Plaintiff gave Defendant adequate notice of Plaintiff's intention to take FMLA leave.
83. Plaintiff provided Defendant with verbal notice sufficient to make the Defendant aware that the Plaintiff required FMLA-qualifying leave, and the anticipated timing and duration of the leave.

84. Plaintiff applied for FMLA leave and availed herself of a protected right under the FMLA to care for a serious health condition and/or to care for Plaintiff's daughter's serious health condition.

85. Plaintiff availed herself of leave under the FMLA.

86. Plaintiff and/or Plaintiff's daughter had a serious health condition qualifying Plaintiff for FMLA leave.

87. Defendant failed to return Plaintiff to work as required by the FMLA.

88. Plaintiff would not have been terminated had Plaintiff not requested and taken FMLA leave.

89. At all times relevant to this complaint, Plaintiff was successfully performing the functions of her position to a level to meet the Defendant's legitimate expectations.

90. Prior to Plaintiff taking FMLA leave, Plaintiff had never been disciplined for poor performance and Plaintiff was satisfactorily performing the duties of her position.

91. Defendant terminated Plaintiff and/or refused to return Plaintiff to her position.

92. Defendant terminated Plaintiff and/or refused to return Plaintiff to her position thereby denying Plaintiff's FMLA leave benefits.

93. Defendant terminated Plaintiff and/or refused to return Plaintiff to her position at the conclusion of Plaintiff's FMLA leave benefits.

94. Defendant intended to deprive Plaintiff of the ability to return to work under the FMLA.

95. Defendant discharged Plaintiff because Plaintiff availed herself of her rights under the FMLA.

96. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages as a result of Defendant's actions.

97. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendant's actions.

98. For Count II, Plaintiff seeks damages, including punitive damages, injunctive relief, or other civil relief as authorized by the Family and Medical Leave Act.

99. Plaintiff requests judgment on count V in an amount in excess of $75,000.

100. Plaintiff seeks an award of attorneys fees, costs, compensatory damages, punitive damages, backwages, pre-judgment and post-judgment interests, injunctive relief and all other relief available under the law.

**COUNT III – Violation of the Genetic Information Nondiscrimination Act of 2008 ("GINA")**

101. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated and states.

102. Plaintiff's daughter manifested a "disease or disorder."

103. Plaintiff's daughter's physician tested Plaintiff's daughter to ascertain Plaintiff's daughter's "disease or disorder."

104. Plaintiff provided notice of the manifestation of this disease or disorder in Plaintiff's daughter and the test results to Defendant.

105. Defendant discriminated against Plaintiff when Defendant terminated Plaintiff because Plaintiff's daughter manifested a particular disease or disorder and/or had a positive test for a "coronavirus" strain.

106. Plaintiff's daughter manifestation of a particular disease or disorder and/or had a positive test for a "coronavirus" strain were a motivating factor in Plaintiff's termination by Defendant.

107. Defendant violated the Genetic Information Nondiscrimination Act of 2008 ("GINA") 42 U.S.C. § 2000ff, *et. Seq,*

108. Plaintiff requests judgment on Count III in an amount in excess of $75,000.

109. Plaintiff seeks an award of attorneys fees, costs, compensatory damages, punitive damages, backwages, pre-judgment and post-judgment interests, injunctive relief and all other relief available under the law.

110. Plaintiff has administratively exhausted Plaintiff's claims under this count.

**COUNT IV – Violation of the Montgomery County Code §27-76, *et seq.***

111. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated and states.

112. Plaintiff was eligible for sick leave to care for her own physical illness or the physical illness of Plaintiff's daughter under the Montgomery County Code §27-76, *et seq*.

113. Defendant obstructed Plaintiff and/or discriminated and retaliated against Plaintiff for taking eligible sick leave under the Montgomery County Code.

114. Defendant violation the Montgomery County Code §27-76, *et seq.* when Defendant denied Plaintiff sick leave, obstructed Plaintiff's utilization of sick leave under the act and/or retaliated against Plaintiff for making a request for protected sick leave.

115. Plaintiff requests judgment on Count III in an amount in excess of $75,000.

116. Plaintiff seeks an award of attorneys fees, costs, compensatory damages, punitive damages, backwages, pre-judgment and post-judgment interests, injunctive relief and all other relief available under the law.

117. Plaintiff has administratively exhausted Plaintiff's claims under this count.

## JURY DEMAND

118. Plaintiff demands a trial by jury on all counts.

Respectfully submitted,

***Daniel E. Kenney, Esq***
Daniel E. Kenney, Esq.
DK Associates, LLC
5425 Wisconsin Avenue, Suite 600
Chevy Chase, MD 20815
202-430-5966 Phone
dan@dkemployment.com
Bar No. 18369

***Morris E. Fischer, Esq.***
Morris E. Fischer, Esq.
Morris E. Fischer, LLC
8720 Georgia Ave, Suite 210
Silver Spring, MD 20910
301-328-7631 Phone
morris@mfischerlaw.com
Bar No. 26286

Attorneys for Plaintiff