## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JESSICA HARRIS | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| BLUEMERCURY, INC    . | )    Case No.  8:21-cv-00031-PWG |
| | ) |
| | ) |
| Defendant, | ) |
| | ) |

## AMENDED COMPLAINT

Comes now the Plaintiff, Jessica Harris, by and through undersigned counsel, and hereby files the instant Complaint against Bluemercury, Inc.. ("Defendant" or "Bluemercury") under the Genetic Information Nondiscrimination Act of 2008 ("GINA"), the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* the Montgomery County Code, the Maryland Flexible Leave Act and Maryland law.

## INTRODUCTION

During the height of the global COVID-19 pandemic, Plaintiff, a retail store manager for one of the largest cosmetic retailers in the Country requested time-off to take care of her 4 year old daughter with asthma who had been diagnosed with a Coronavirus strain.   Plaintiff is also the mother of a second young daughter with special needs.  Although Bluemercury claims that the "health and safety of our store teams and clients is our highest priority" this was not true as applied to Plaintiff and Plaintiff's  daughters.  Instead, Bluemercury retaliated against Plaintiff and terminated her, leaving Plaintiff struggling to care for her chronically ill and special needs children during one of the worst global pandemics in modern history.   Bluemercury treated the

1

"health and safety" of Plaintiff and Plaintiff's daughters as its lowest priority and Plaintiff now brings this action to recover damages as the result of her unlawful termination.

## THE PARTIES

1. Jessica Harris (hereinafter referred to as "Plaintiff") is a resident of the state of Maryland.

2. Plaintiff resides at 2300 McMahon Road, Apt 2331, Wheaton, Maryland 20902.

3. At all times relevant to this complaint, Plaintiff has been a resident of the State of Maryland.

4. Plaintiff is over the age of eighteen (18).

5. Defendant, Bluemercury, Inc. is a multi-million dollar "luxury beauty" retail business.

6. Bluemercury is a wholly owned subsidiary of Macys, Inc. and operates 166 specialty "luxury beauty" stores nationwide.

7. Bluemercury conducts retail business in Maryland and the DMV area through "specialty" stores and stores within Macys, Inc. retail locations.

8. Bluemercury employs more than 50 employees within a 75 mile radius of 1185 Grand Park Avenue, North Bethesda, MD 20852.

9. Bluemercury has systematic and continuous business contacts within the State of Maryland and with Maryland residents.

10. Bluemercury is registered to do business in the State of Maryland.

11. Defendant conducts millions of dollars of business in the State of Maryland.

12. Defendant conducts business from Defendant's properties and offices in the State of Maryland.

13. Defendant's registered agent for service of process in Maryland is Corporate Creations Network, Inc., 2 Wisconsin Circle No. 700, Chevy Chase, MD 20815.

14. Defendant is licensed to do business in the state of Maryland.

## **JURISDICTION**

15. The United States District Court for the District of Maryland has jurisdiction over this matter.

16. At all times relevant to this complaint, Plaintiff was employed by Defendant in the state of Maryland.

17. At all times relevant to this complaint, Plaintiff was a resident of the State of Maryland.

18. The employment actions and decisions described in this Complaint substantially occurred in  Maryland.

19. Plaintiff's claims under the Genetic Information Nondiscrimination Act of 2008 ("GINA") and the Family Medical Leave Act, 29 U.S.C. §2601, *et seq* raise questions of federal law.

20. The United States District Court for the District of Maryland has original jurisdiction over this matter.

21. The United States District Court for the District of Maryland has personal jurisdiction over the parties as described in ¶¶ 1-18, *supra.*

22. The United States District Court for the District of Maryland has supplemental jurisdiction over Plaintiff's Maryland state law claims pursuant to 28 U.S.C. §1367, as the claims are so related to the claims in the action within the original jurisdiction of this court that they form part of the same case or controversy.

## FACTS

23. Plaintiff began working for Defendant in February 2018 as a "full time beauty expert."

24. Plaintiff has substantial experience and expertise in retail beauty consultation and sales.

25. As a beauty expert, Plaintiff teaches beauty techniques and classes to retail staff and consumers.

26. Plaintiff also provides advice and guidance to consumers regarding cosmetic brand choices and beauty supply decisions.

27. At all times relevant to this complaint, Plaintiff's performance exceeded the legitimate expectations of Bluemercury, Inc.

28. For example, Plaintiff received praise and accolades from Bluemercury's vendors, brand liaisons and clients.

29. Plaintiff's clients routinely gave positive and glowing reviews about Plaintiff's work product.

30. In April 2019, Plaintiff was promoted to the interim "store manager" position at Defendant's "Pike and Rose" retail location (1185 Grand Park Avenue, North Bethesda, MD 20852) (Bluemercury 152).

31. As of April 2019, Plaintiff assumed the supervisory and managerial duties for Defendant's the Pike and Rose location.

32. At all times relevant to this complaint, Plaintiff's performance in the managerial position exceeded the legitimate expectations of Bluemercury, Inc..

33. Based on Plaintiff's outstanding performance in the interim store manager position, Plaintiff was promoted to store manager in January 2020 at Defendant's flagship "Wildwood" store location in Bethesda, Maryland.  (Bluemercury store 051).

34. Plaintiff was recruited for by executive level Bluemercury management based on Plaintiff's strong performance.   Plaintiff was given a raise in connection with her promotion to the Wildwood store manager position.

35. At all times relevant to this complaint, Plaintiff's performance in the store manager position exceeded the legitimate expectations of Bluemercury, Inc..

36. In January and February 2020, the United States was in the early grips of the COVID-19 pandemic.

37. Due to a number of factors, U.S. citizens had little information concerning the spread, impact and risks of the novel coronavirus.

38. Moreover, many retail chains such as Bluemercury were ill-prepared or lack information concerning the risks to employees, their families or customers presented by COVID-19.

39.  Moreover, in January and February 2020, elected officials in the federal government were telling the American public and corporate retailers like Bluemercury that the Coronavirus would "disappear" and it would be like a "miracle."

40. The President of the United States stated that the coronavirus was comparable to the "regular flu."

41.  With respect to indications that death rates reported by the World Health Organization were approximately 3.4%, the President stated that this death rate was "way" overstated and was "way under 1%."

42.  The President of the United States also told employees that they were fine to "go to work" even where he, she or a family member had been diagnosed with COVID-19.

43.  However, the Center for Disease Control and the Department of Health and Human Services provided a drastically different account to the American public.

44.  On January 31, 2020, U.S. Department of Health and Human Services Secretary Alex M. Azar II declared a public health emergency: "As a result of confirmed cases of 2019 Novel Coronavirus (2019-nCoV), on this date and after consultation with public health officials as necessary, I, Alex M. Azar II, Secretary of Health and Human Services, pursuant to the authority vested in me under section 319 of the Public Health Service Act, do hereby determine that a public health emergency exists and has existed since January 27, 2020, nationwide."

45.  As a retail working mom with an asthmatic and special needs daughter, Plaintiff could not afford to be cavalier about a global pandemic.  Moreover, though the public was falsely told that this was the "flu," Plaintiff placed a higher value on the safety and wellbeing of her family, colleagues and customers.  Perhaps, things would have turned out differently if Plaintiff's concerns were shared by corporate leaders or the former highest elected executive branch official in the United States.

46.  Unfortunately, they were not.  As of April 2, 2021, the U.S. has approximately 30.6 million confirmed Coronavirus cases and 553,000 mothers, daughters, sons, fathers and people dead.

47.   Plaintiff's daughter is 5 years old.  At the time of the events giving rise to this Complaint, Plaintiff's daughter was four years old.

48.   In October 2019, Plaintiff's daughter was diagnosed with Asthma.

49.   Plaintiff's daughter's juvenile asthma is a serious health condition.

50.   Asthma in children and adults is a serious health condition.

51.   Plaintiff's daughter's asthma is a serious health condition involving continuing treatment by a health care provider.

52.   Plaintiff's daughter's asthma is a chronic serious health condition.

53.   Plaintiff's daughter's asthma causes a period of incapacity of more than three consecutive full calendar days.

54.   Plaintiff's daughter received treatment by a healthcare provider and a regiment of continuing treatment under the supervision of a healthcare provider.

55.   Plaintiff's daughter received in-person treatment from Plaintiff's daughter's healthcare provider within 7 days of her diagnosed incapacity due to asthma.

56.   Plaintiff's daughter is required to have periodic visits for treatment with a health care provider as a result of her chronic serious health condition.

57.   Plaintiff's daughter's asthma continues over an extended period of time and involves continuing modes of a single underlying condition.

58.   Plaintiff's daughter's asthma causes episodic periods of incapacity.

59.   Between October 2019, and February 2020, Plaintiff's daughter received continuing health care treatment to treat Plaintiff's daughter's asthma on at least three occasions.

60. Between October 2019 and February 2020, Plaintiff's daughter had multiple instances of incapacity as a result of her Asthma and complications from her Asthma and coronavirus.

61. Between October 2019 and February 2020, Plaintiff had to care for Plaintiff's daughter during Plaintiff's daughter's periods of incapacity, medical treatment and complications.

62. In early February 2, 2020, Plaintiff's daughter fell ill with "flu like symptoms."

63. The flu like symptoms included symptoms of Plaintiff's daughter's asthma condition.

64. Plaintiff's daughter experienced incapacity due to her asthma and coronavirus.

65. Plaintiff's daughter required medical treatment due to her asthma and coronavirus.

66. Plaintiff's daughter received treatment by a healthcare provider and a regiment of continuing treatment under the supervision of a healthcare provider due to Plaintiff's asthma and coronavirus.

67. As of February 2, 2020 the global COVID-19 pandemic was raging and more and more U.S. citizens were becoming infected.

68. Although much is still left to be learned about COVID-19, the CDC has proclaimed that individuals with asthma are more susceptible to serious harm and complications from COVID-19. For example, the CDC stated "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19. COVID-19 can affect your nose, throat, lungs, (respiratory tract); cause an asthma attack; and possibly lead to pneumonia and acute respiratory disease."

69. The CDC provides the following guidance for those persons and family members with asthma "[during a COVID-109] spread in your community, stay home as much as possible to reduce your risk of being exposed."

70. The combination of Plaintiff's daughter's age, juvenile asthma, a global respiratory pandemic and coronavirus constitutes a serious health condition for which FMLA leave is available.

71. Given the nature of the global pandemic, the uncertainty of the novel coronavirus and the lack of information concerning the virus, Plaintiff determined that she needed to care for her daughter's medical condition and that such medical condition was serious.  In addition, Plaintiff was concerned  about the risk of  endangering her coworkers and customers or contracting COVID-19 while her daughter's immune system was compromised.  Plaintiff also has a second daughter with special needs who is considered at risk for serious complications due to Coronavirus.

72. In the context of the COVID-19 pandemic, Plaintiff's daughters health condition was serious.

73. Plaintiff informed Defendant that her daughter had tested positive for a strain of the coronavirus which was not the novel coronavirus.

74. Plaintiff previously informed Defendant that Plaintiff's daughter has asthma. Plaintiff also informed Defendant that Plaintiff has a second child with special needs.

75. Between February 2, 2020 and February 7, 2020, Plaintiff utilized Family and Medical Leave Act, Montgomery County Code and the Maryland Flexible Leave Act eligible sick leave to care for her daughters.

76.  Plaintiff notified Bluemercury that she was taking leave to care for her daughter's serious health condition.

77.  Bluemercury had notice of Plaintiff's intent, desire and/or attempt to request leave under the FMLA and/or the MCC.

78.  Plaintiff qualified for Family and Medical Leave Act and Montgomery County Code leave under Bluemercury's handbook policy.

79.  On February 7, 2020 Plaintiff was notified that she was terminated from employment.

80.  Plaintiff was terminated from employment because Plaintiff utilized leave under the FMLA, Montgomery County Code and the Maryland Flexible Leave Act.

81.  Plaintiff was terminated from employment because Plaintiff had requested leave under the FMLA, the Maryland Flexible Leave Act and the Montgomery County Code.

82.  Plaintiff was terminated from employment because Defendant retaliated against Plaintiff for utilizing leave during the midst of the COVID-19 pandemic under the FMLA, Montgomery County Code and the Maryland Flexible Leave Act.

83.  Plaintiff was terminated from employment because Defendant was aware that Plaintiff's daughter had contracted the non-novel coronavirus.

84.  Between 2020 and 2021, Defendant and Defendants' employees have been making false statements about Plaintiff to Plaintiff's potential employers and business relations.

85. Between 2020 and 2021, Defendant and Defendants' employees have been making false statements about that Plaintiff was terminated for being a thief and/or for being a liar to Plaintiff's potential employers and business relations.

86. Defendant's actions were willful and malicious.

87. Defendant was aware that it was violating federal and county law when Defendant terminated Plaintiff.

88. Plaintiff has suffered substantial pecuniary and nonpecuniary damages as a result of Defendant's unlawful actions.

**COUNT I – Retaliation in Violation of The Family Medical Leave Act, 29 U.S.C. §2615, *et seq.***

89. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated.

90. Plaintiff was an eligible employee entitled to FMLA benefits.

91. Defendant is an employer within the meaning of the FMLA.

92. Defendant is a covered employer under the FMLA.

93. Defendant employed more than 50 employees within a 75 mile radius of Plaintiff's employment.

94. Plaintiff worked more than 1,250 hours for Defendant in the 12 months preceding Plaintiff's FMLA leave request.

95. Plaintiff applied for FMLA leave and availed herself of a protected right under the FMLA to care for a chronic and serious health conditions of Plaintiff's children.

96. Plaintiff applied for FMLA leave and availed herself of a protected right under the FMLA to care for Plaintiff's daughters' serious and chronic health condition.

97. Plaintiff engaged in protected activity under the FMLA.

98. Plaintiff availed herself of leave under the FMLA.

99.    Plaintiff requested leave under the FMLA.

100.   Plaintiff and Plaintiff's daughter had a qualifying FMLA serious health  condition.

101.   Plaintiff's daughter had a serious health condition qualifying Plaintiff for FMLA leave.

102.   Defendant had notice of Plaintiff's protected activity.

103.   Plaintiff provided Defendant with verbal notice sufficient to make the Defendant aware that the Plaintiff required FMLA-qualifying leave, and the anticipated timing and duration of the leave.

104.   Defendant had notice and understood Plaintiff to be requesting leave to care for Plaintiff's daughter's serious medical condition.

105.   Plaintiff's protected activity was causally connected to Defendant's decision to terminate Plaintiff.

106.   Defendant discharged Plaintiff because Plaintiff availed herself of her rights  under the FMLA.

107.   Defendant used Plaintiff's FMLA leave as a negative factor in its decision to discharge Plaintiff.

108.   There was a causal link between Plaintiff's use of FMLA leave, requests for FMLA leave and protected activity and Plaintiff's termination.

109.   At all times relevant to this complaint, Plaintiff was successfully performing the functions of her position to a level to meet the Defendant's legitimate expectations.

110.   Defendant violated the FMLA 29 U.S.C. §2615(a)(2) when Defendant terminated Plaintiff for engaging in protected activity under the FMLA.

111. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages.

112. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendant's actions.

113. For Count I, Plaintiff seeks damages, including punitive damages, injunctive relief, or other civil relief as authorized by the Family and Medical Leave Act.

114. Plaintiff requests judgment on count IV in an amount in excess of $75,000.

115. Plaintiff seeks an award of attorneys fees, costs, compensatory damages, punitive damages, backwages, pre-judgment and post-judgment interests, injunctive relief and all other relief available under the law.

## COUNT II – Interference in Violation of The Family Medical Leave Act, 29 U.S.C. §2615, *et seq.*

116. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated.

117. Plaintiff was an eligible employee entitled to FMLA benefits.

118. Defendant is covered entity under the FMLA.

119. Plaintiff gave Defendant adequate notice of Plaintiff's intention to take FMLA leave.

120. Plaintiff provided Defendant with verbal notice sufficient to make the Defendant aware that the Plaintiff required FMLA-qualifying leave, and the anticipated timing and duration of the leave.

121. Plaintiff applied for FMLA leave and availed herself of a protected right under the FMLA to care for a serious health condition and/or to care for Plaintiff's daughter's serious health condition.

122. Plaintiff availed herself of leave under the FMLA.

123. Plaintiff and/or Plaintiff's daughter had a serious health condition qualifying Plaintiff for FMLA leave.

124. Defendant failed to return Plaintiff to work as required by the FMLA.

125. Plaintiff would not have been terminated had Plaintiff not requested and taken FMLA leave.

126. At all times relevant to this complaint, Plaintiff was successfully performing the functions of her position to a level to meet the Defendant's legitimate expectations.

127. Prior to Plaintiff taking FMLA leave, Plaintiff had never been disciplined for poor performance and Plaintiff was satisfactorily performing the duties of her position.

128. Defendant terminated Plaintiff and/or refused to return Plaintiff to her position.

129. Defendant terminated Plaintiff and/or refused to return Plaintiff to her position thereby denying Plaintiff's FMLA leave benefits.

130. Defendant terminated Plaintiff and/or refused to return Plaintiff to her position at the conclusion of Plaintiff's FMLA leave benefits.

131. Defendant intended to deprive Plaintiff of the ability to return to work under the FMLA.

132. Defendant discharged Plaintiff because Plaintiff availed herself of her rights under the FMLA.

133. Plaintiff has suffered and continues to suffer substantial pecuniary and non-pecuniary damages as a result of Defendant's actions.

134. Plaintiff has suffered severe stress, anxiety and depression and other mental and physical anguish as a result of Defendant's actions.

135. For Count II, Plaintiff seeks damages, including punitive damages, injunctive relief, or other civil relief as authorized by the Family and Medical Leave Act.

136. Plaintiff requests judgment on count V in an amount in excess of $75,000.

137. Plaintiff seeks an award of attorneys fees, costs, compensatory damages, punitive damages, backwages, pre-judgment and post-judgment interests, injunctive relief and all other relief available under the law.

**COUNT III – Violation of the Genetic Information Nondiscrimination Act of 2008 ("GINA")**

138. Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated.

139. Plaintiff's daughter manifested a "disease or disorder."

140. Plaintiff's daughter's physician tested Plaintiff's daughter to ascertain Plaintiff's daughter's "disease or disorder."

141. Plaintiff provided notice of the manifestation of this disease or disorder in Plaintiff's daughter and the test results to Defendant.

142. Defendant was informed of tests results concerning Plaintiff's daughter's disease or disorder that revealed genetic information related to the disease or disorder, i.e., that Plaintiff's daughter's strain of coronavirus was a different genomic variation of the COVID-19 virus.

143. Defendant had information that Plaintiff's daughter had tested positive for a disorder that was a different genetic variation of the COVID-19 virus.

144. Defendant had information that Plaintiff's other daughter manifested autism.

145. Defendant had information about Plaintiff's family member manifestation of a disease or disorder.

146.   Plaintiff's daughters were diagnosed with a disease or disorder by a health care professional with appropriate training and expertise in the field of medicine involved.

147.   Defendant was aware that Plaintiffs daughters were diagnosed with a disease or disorder by a health care professional with appropriate training and expertise in the field of medicine involved.

148.   Defendant discriminated against Plaintiff when Defendant terminated Plaintiff because Plaintiff's daughter manifested a genetic variation of COVID-19 and a particular disease or disorder and/or had a positive test for a "coronavirus" strain.

149.   Plaintiff's daughter manifestation of a particular disease or disorder and/or had a positive test for a "coronavirus" strain were a motivating factor in Plaintiff's termination by Defendant.

150.   Defendant violated the Genetic Information Nondiscrimination Act of 2008 ("GINA") 42 U.S.C. § 2000ff, *et. Seq,*

151.   Plaintiff requests judgment on Count III in an amount in excess of $75,000.

152.   Plaintiff seeks an award of attorneys fees, costs, compensatory damages, punitive damages, backwages, pre-judgment and post-judgment interests, injunctive relief and all other relief available under the law.

153.   Plaintiff has administratively exhausted Plaintiff's claims under this count.

**COUNT IV – Violation of the Montgomery County Code §27-76, *et seq.***

154.   Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated.

16

155.   Plaintiff was eligible for sick leave to care for her own physical illness or the physical illness of Plaintiff's daughter under the Montgomery County Code §27-76, *et seq.*

156.   Defendant obstructed Plaintiff and/or discriminated and retaliated against Plaintiff for taking eligible sick leave under the Montgomery County Code.

157.   Defendant violation the Montgomery County Code §27-76, *et seq.* when Defendant denied Plaintiff sick leave, obstructed Plaintiff's utilization of sick leave under the act and/or retaliated against Plaintiff for making a request for protected sick leave.

158.   Plaintiff requests judgment on Count III in an amount in excess of $75,000.

159.   Plaintiff seeks an award of attorneys fees, costs, compensatory damages, punitive damages, backwages, pre-judgment and post-judgment interests, injunctive relief and all other relief available under the law.

160.   Plaintiff has administratively exhausted Plaintiff's claims under this count.

**COUNT V – Violation of the Maryland Flexible Leave Act, Md. Code Ann., Lab & Empl. 3-801, *et seq.***

161.   Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated.

162.   Plaintiff requested leave authorized under the Maryland Flexible Leave Act.

163.   Plaintiff took leave authorized under the Maryland Flexible Leave Act.

164.   Plaintiff requested leave under the Maryland Flexible Leave Act to care for Plaintiff's sick child.

165.   Plaintiff took leave under the Maryland Flexible Leave Act to care for Plaintiff's sick child.

166.    Defendant terminated, disciplined or otherwise discriminated against Plaintiff and/or threatened to terminate, discipline or otherwise discriminate against Plaintiff because Plaintiff took leave under the Maryland Flexible Leave Act to care for Plaintiff's sick child and Plaintiff requested leave under the Maryland Flexible Leave Act to care for Plaintiff's sick child.

**COUNT VI - Tortious Interference with Prospective Economic Advantage/Economic Relations.**

167.    Plaintiff hereby adopts and incorporates all aforesaid paragraphs as if herein stated.

168.    Defendant falsely told Plaintiff's business relationships that Plaintiff had been terminated for "stealing."

169.    Defendant was aware that Plaintiff was not "stealing."

170.    Defendant's actions were willful, intentional and malicious.

171.    Defendant's actions were calculated to cause damage to Plaintiff in her lawful business in the form loss of future employment, loss of business relationships, loss of income, loss of business relations, loss of business community standing, loss of marketability of Plaintiff's services and other loss economic opportunities.

172.    Defendant acted with the unlawful purpose to cause damage to -Plaintiff in her lawful business in the form loss of future employment, loss of business relationships, loss of income, loss of business relations, loss of business community standing, loss of marketability of Plaintiff's services and other loss economic opportunities.

173.    Defendant acted without right or justifiable cause.

174.  Plaintiff has suffered severe stress, and other mental and physical anguish as a result of Counter-Defendant's actions.

175.  Plaintiff has suffered damages as the result of Counter-Defendant's tortious interference with prospective economic advantage in the loss of future employment, loss of business relationships, loss of income, loss of business relations, loss of business community standing, loss of marketability of Plaintiff's services and other loss economic opportunities.

176.  Despite being qualified, Plaintiff has not been hired by numerous of industry competitors.  Plaintiff has spoken with employees that these industry competitors and has been told that Bluemercury informed these competitors, falsely, that Plaintiff was terminated for stealing.

177.  Plaintiff has also spoken with numerous industry peers and been told that Bluemercury has reached out to Plaintiff's peers and falsely told Plaintiff's peers that Plaintiff was terminated for stealing.

178.  Defendant acted willfully and maliciously.

## COUNT VII– WRONGFUL TERMINATION IN VIOLATION OF MARYLAND PUBLIC POLICY

179.  Plaintiff hereby incorporates each of the preceding paragraphs as if fully re-stated herein.

180.  Defendant terminated Plaintiff in contravention of a clear mandate of public policy.

181.  The United States declared a Public Health Emergency on January 31, 2020.

182.  On January 31, 2020, U.S. Department of Health and Human Services Secretary Alex M. Azar II declared: "As a result of confirmed cases of 2019 Novel

Coronavirus (2019-nCoV), on this date and after consultation with public health officials as necessary, I, Alex M. Azar II, Secretary of Health and Human Services, pursuant to the authority vested in me under section 319 of the Public Health Service Act, do hereby determine that a public health emergency exists and has existed since January 27, 2020, nationwide."

183.   The State of Maryland the United States have expressed clear mandates of public policies applicable to Plaintiff's employment.

184.   Maryland declared a "State of Emergency" and the "Existence of a Catastrophic Health Emergency" related to the spread of the COVID-19 virus.  Maryland has declared COVID-19 an "immediate danger to public safety."

185.   As of March, 2021, Maryland had approximately 66,000 confirmed cases of COVID-19 and 1,500 deaths.

186.   As of March, 2021 there were approximately 30 million confirmed cases of COVID-19 in the United States resulting in over half a million deaths.

187.   COVID-19 and the spread of COVID-19 represents a substantial and specific danger to the public health or safety.

188.   The State of Maryland declared that it was a substantial and specific danger to the public health or safety to operate indoor facilities not in compliance with Social Distancing Guidance.

189.   The General Assembly has an announced that COVID-19 constitutes a state of emergency and the existence of a catastrophic health emergency.

190.   Maryland has a stated public policy to "protect the public peace, health, and safety in the State, to preserve the lives and property of the people of the State,

and to ensure the social and economic resilience of the  Md. Public Safety Code §14-101, *et seq.*

191.    Plaintiff was terminated in violation of a clear mandate of public policy.

192.    Plaintiff was terminated for requesting leave and taking leave to care for her 4 year old asthmatic daughter who had contracted Coronavirus in the midst of a global respiratory pandemic.

193.    Plaintiff was terminated for attempting to protect the health and safety of the public by not putting her daughter, Defendants' customers and Plaintiff's family and colleagues at risk.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff demands:

A.    For each cause of action, Plaintiff seeks a separate award of damages against Defendant in an amount in excess of $75,000.00.  Plaintiff demands an award of backwages, front wages, consequential damages, compensatory damages, punitive damages, nominal damages, statutory damages, prejudgment and post judgment interest, attorneys' fees, costs, injunctive relief and all other available relief.

**JURY DEMAND**

194.  Plaintiff demands a trial by jury on all counts.

Respectfully submitted,

*<u>Daniel E. Kenney, Esq</u>*
Daniel E. Kenney, Esq.
DK Associates, LLC
5425 Wisconsin Avenue, Suite 600
Chevy Chase, MD 20815
202-430-5966 Phone
dan@dkemployment.com

Bar No. 18369

***Morris E. Fischer, Esq.***
Morris E. Fischer, Esq.
Morris E. Fischer, LLC
8720 Georgia Ave, Suite 210
Silver Spring, MD 20910
301-328-7631 Phone
morris@mfischerlaw.com
Bar No. 26286

Attorneys for Plaintiff